IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANTHONY J. CANCELOSI | : | |
| | : | |
| v. | : | Civil Action No. DKC 25-2015 |
| | : | |
| COLUMBIA LIGHTHOUSE FOR THE BLIND | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment law case is the motion pursuant to 28 U.S.C. § 1404(a) to transfer venue to the United States District Court for the District of Columbia filed by Columbia Lighthouse for the Blind ("Defendant" or "CLB"). (ECF No. 15).[1] The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to transfer venue will be granted. Defendant's partial motion to dismiss will remain for resolution in the transferee district.

I. **Background**

   A. **Factual Background**[2]

Defendant CLB "is a non-profit charity that has served residents who are blind and visually impaired in the Greater Washington, D.C. area since 1900." (ECF No. 14 ¶ 3). It "is a

---

[1] Defendant does not move under 28 U.S.C. § 1406 to dismiss or transfer for improper venue.

[2] The facts herein are undisputed unless otherwise noted.

resident of the District of Columbia, where it is incorporated and maintains its principal place of business," (*Id.* ¶ 4), and it maintains an office in Silver Spring, Maryland, (ECF No. 15-3 ¶ 5). Plaintiff Anthony J. Cancelosi was the President and Chief Executive Officer of CLB from 2005 to April 30, 2025. (ECF No. 14 ¶¶ 7, 19). He is a resident of Virginia and worked five days a week at Defendant's D.C. corporate headquarters during his employment with Defendant. (*Id.* ¶ 2; ECF No. 15-3 ¶ 8).

Defendant hired Plaintiff when "it was the subject of an FBI investigation of the former CEO's alleged misuse of funds of the organization." (ECF No. 14 ¶ 9). Plaintiff's offer letter included twenty days of paid vacation. (*Id.* ¶ 7; ECF No. 14-2, at 2). On September 20, 2006, Defendant entered into an alleged Severance Agreement with Plaintiff, which provided for "severance of one year's salary and benefits in the event of the President's involuntary termination." (ECF Nos. 14 ¶ 11; 14-5, at 2). Plaintiff led Defendant through the FBI investigation and into subsequent success. (ECF No. 14 ¶ 9).

On April 9, 2025, members of Defendant's Board held a lunch meeting with Plaintiff at the Cosmos Club in the District of Columbia, where they expressed their plan to replace him with a new President. (*Id.* ¶ 14; ECF No. 14-7, at 2). On April 15, 2025, Ms. Dufrane, one of Defendant's Board members, followed up via

2

email with Plaintiff, explaining the plan to transition him into the role of President Emeritus and attaching an Executive Employment Agreement to that effect. (ECF No. 14 ¶¶ 15-16). Ms. Dufrane stated that if Plaintiff did not sign the Executive Employment Agreement by 5:00 PM of the following day, Plaintiff would be terminated. (*Id.* ¶ 16). Plaintiff did not sign by 5:00 PM the following day. On April 29, 2025, Ms. Dufrane told Plaintiff that if he did not sign the agreement that same day, he would be terminated. (*Id.* ¶ 18). Plaintiff did not sign the agreement. (*Id.* ¶ 19). On April 30, 2025, the Board voted to terminate Plaintiff. (*Id.*). Dr. Deegan, a Board member, allegedly later made discriminatory remarks about Plaintiff's age in connection with his termination. (*Id.* ¶¶ 51-52). Plaintiff was 81 at the time. (*Id.* ¶ 51).

On May 15, 2025, Defendant paid Plaintiff his final paycheck. (*Id.* ¶ 21). This paycheck "included a payment for accrued, unused vacation pay" that Plaintiff alleges "was substantially less than the vacation pay owed to him." (*Id.*). Defendant has not paid any severance or benefits to Plaintiff, despite what Plaintiff alleges is owed to him under the Severance Agreement. (*Id.* ¶ 22).

    **B.    Procedural Background**

On June 24, 2025, Plaintiff filed a complaint against CLB, seeking relief for breach of contract (Counts One and Two),

3

violation of the Maryland Wage Payment and Collection Law ("MWPCL") (Count Three), violation of the District of Columbia Wage Payment and Collection Law ("DCWPCL") (Count Four), and age discrimination in violation of the District of Columbia Human Rights Act (Count Five). (ECF No. 1). Plaintiff amended his complaint on July 10, 2025. (ECF No. 14). On July 24, 2025, Defendant filed a motion to transfer venue to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a) or, in the alternative, a motion to dismiss Counts One and Five for failure to state a claim. (ECF No. 15). On August 14, 2025, Plaintiff filed separate oppositions to Defendant's motion to transfer venue, (ECF No. 19), and to Defendant's partial motion to dismiss in the alternative, (ECF No. 18). On September 4, 2025, Defendant filed a single reply to Plaintiff's two oppositions. (ECF No. 20).

## II. Analysis

### A. Standard of Review

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" if doing so is to "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "The threshold question on a motion to transfer is whether the action might have been brought in the transferee

4

forum." *Howard Univ. v. Watkins*, No. 06-cv-2076-DKC, 2007 WL 763182, at *3 (D.Md. Mar. 12, 2007). The parties do not appear to dispute that this action could have been brought in the District of Columbia, nor could they. Venue is proper in the District of Columbia because Defendant "is a resident of the District of Columbia, where it is incorporated and maintains its principal place of business." (ECF No. 14 ¶ 4); 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

Once satisfied that the moving party has met this threshold requirement, courts in the Fourth Circuit apply a four-factor test to transfer motions: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citing, inter alia, *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002)). "The burden is on the moving party to show that transfer to another forum is proper." *Gilbert v. Freshbikes, LLC*, 32 F.Supp.3d 594, 607 (D.Md. 2014) (citing *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.Md. 2005)). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the

5

federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). While courts frequently defer to a plaintiff's choice of forum, such "deference is not limitless . . . and can be overcome." *Gilbert*, 32 F.Supp.3d at 607 (citing *Lynch*, 237 F.Supp.2d at 617). Ultimately, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Hausfeld v. Love Funding Corp.*, 16 F.Supp.3d 591, 604 (D.Md. 2014) (alteration in original) (quoting *Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D.Md. 2008)).

B.  **Plaintiff's Choice of Forum**

Plaintiff's choice of forum is entitled to little deference in this case. "Where a plaintiff sues in her home forum, her choice of venue is 'ordinarily accorded considerable weight.'" *Hausfeld*, 16 F.Supp.3d at 604 (quoting *Lynch*, 237 F.Supp.2d at 617). Such deference "is lower when the plaintiff is not [a] citizen of the [forum] state or the case does not otherwise have 'significant ties' to the forum." *Doe v. Choice Hotels Int'l, Inc.*, No. 24-cv-1598-TDC, 2025 WL 2108792, at *10 (D.Md. July 28, 2025) (quoting *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237–38 (2$^\text{d}$ Cir. 2004)); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("Where the plaintiff's choice is not its home forum, however, the

6

presumption in the plaintiff's favor 'applies with less force.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981))).

Plaintiff is not a citizen of Maryland, but rather Virginia, nor does his case have significant ties to Maryland.  The venue standard in § 1391(b)(2) is instructive.  That provision permits a plaintiff to lay venue where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  If Plaintiff cannot meet that standard, such that venue is improper, then he necessarily is not entitled to deference regarding his choice of forum.  This court has held that venue in this district is improper under § 1391(b)(2) if the plaintiff "may establish all the critical elements of the action . . . without ever making reference to events in Maryland."  *MTGLQ Invs., L.P. v. Guire*, 286 F.Supp.2d 561, 565 (D.Md. 2003).  "Events that relate only tangentially to the claim" are insufficient because "they do not 'give rise to' the claim at all."  *Id.* (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).  Plaintiff argues that he has "performed extensive work in Maryland, including working and supervising personnel in CLB's facilities in Silver Spring, Maryland, meeting and working with donors and volunteers in Maryland, and serving on several boards and commissions for CLB there."  (ECF No. 19, at 5).  Such activities, however, are merely tangential to Plaintiff's claims.  He can state all but his MWPCL

7

claim without referring to Maryland at all. Moreover, the fact that Plaintiff earned some wages in Maryland such that the MWPCL is plausibly applicable does not automatically make venue in Maryland proper. That adds nothing to the tangential nature of the activities for which he earned those wages. Additionally, his assertion that his MWPCL claim is based on Defendant's "refusal to pay him wages he earned in [Maryland]," (ECF No. 19, at 5-6), is dubious: Plaintiff demands "severance pay and benefits" and "accrued, unused vacation pay owed to him," (ECF No. 14 ¶ 38). Although these amounts might constitute "wages," it is a stretch to argue that they were "earned" in Maryland when they are the product of D.C. agreements[3] and a D.C.-centered employment relationship. Consequently, Plaintiff can allege no significant connection to Maryland and his choice of forum merits little weight.

C.  **Convenience of the Witnesses and Parties**

The second and third factors tip slightly in Defendant's favor. As this court has previously noted, the "distance between the federal courthouses in Washington, D.C. and Greenbelt is less

---

[3] The parties do not clearly state where the Severance Agreement and Offer Letter were executed. Given that the parties do assume D.C. substantive law governs the alleged contracts, and Plaintiff makes no argument that the alleged contracts were executed somewhere other than the transferee forum, the court will presume at this stage that the agreements were executed in the District of Columbia.

8

than fifteen miles, making neither court appreciably more convenient to either the parties or witnesses." *Hausfeld*, 16 F.Supp.3d at 604-05 (citing *Jones v. Koons Auto., Inc.*, 752 F.Supp.2d 670, 681 n.8 (D.Md. 2010)). Accordingly, it is unnecessary to engage in a detailed analysis of these two factors. The court simply notes that four of the named witnesses reside in the District of Columbia, while only two reside in Maryland. (ECF No. 19, at 6); *Dicken v. United States*, 862 F.Supp. 91, 93 (D.Md. 1994) (favoring transfer where "a greater number of witnesses [would] be convenienced by a transfer"). Moreover, neither party is a resident of Maryland, and Defendant is a resident of the District of Columbia. (*See* ECF No. 14 ¶ 4). Finally, Defendant's Human Resources Director filed a declaration stating that "[p]ersonnel records for CLB employees, including Mr. Cancelosi, are kept at the corporate headquarters in D.C." (ECF No. 15-3 ¶ 14). Plaintiff asserts that because some Board members who voted on his termination live in Maryland, there are relevant documents in Maryland related to his termination. (ECF No. 19, at 8). Plaintiff's conclusion does not follow, however, because Plaintiff does not allege that any Board member actually voted in Maryland, much less that such a vote generated documentation in Maryland, as opposed to the corporate headquarters in the District of Columbia. Accordingly, it appears that the relevant documents are located

9

primarily in the District of Columbia.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6) (noting that courts should consider "relative ease of access to sources of proof"). To the extent that these facts break the equipoise of the convenience factors, the court finds that they weigh in favor of transfer.

    **D.    Interests of Justice**

The interests of justice tip in favor of Defendant. Appropriate considerations under this factor are "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Hausfeld*, 16 F.Supp.3d at 605 (quoting *Atl. Marine*, 571 U.S. at 62 n.6).  The parties do not raise arguments regarding court congestion.  The other two considerations, however, support transfer.

The agreements underlying Plaintiff's breach of contract claims in Counts One and Two were evidently executed in the District of Columbia and both parties assume that they are governed by D.C. law.[4]  (ECF Nos. 15-2, at 8–12; 18, at 5–12).  Plaintiff worked in the District of Columbia five days a week and maintained

---

[4] *See supra* note 2.

10

his only office in the District of Columbia. (ECF No. 15-3 ¶¶ 7-8). The lunch meeting where Defendant's Board members notified Plaintiff of their intent to transition Plaintiff out of his role occurred in the District of Columbia.[5] (*Id.* ¶ 15). Defendant's payments to Plaintiff issue from the District of Columbia. (*See* ECF No. 14-9, at 2). The documents pertaining both to Plaintiff's alleged contracts and Defendant's alleged breach are located at Defendant's corporate headquarters located in the District of Columbia. (ECF No. 15-3 ¶ 14). Plaintiff's statutory claims in Counts Three and Four both rest on the severance pay and accrued vacation leave he alleges are due under D.C. agreements from his D.C. employer. (ECF No. 14 ¶¶ 38, 45). Finally, the alleged age discriminatory remarks underpinning Count Five appear to have occurred in the District of Columbia. (*Id.* ¶ 51; ECF No. 15-3 ¶ 16). In other words, the center of gravity of each Count is the District of Columbia. Plaintiff may have done substantial work in Maryland during his twenty-year tenure with Defendant, but Defendant's H.R. Director declares that Plaintiff traveled to Maryland only "about once a quarter," (ECF No. 15-3 ¶ 8), and none of the complained-of conduct by Defendant appears to have unfolded

---

[5] Neither party clearly states where the Board vote to terminate Plaintiff took place. Plaintiff alleges that the Board terminated him "at the direction of Ms. Dufrane." (ECF No. 14 ¶ 19). Ms. Dufrane "lives and works in Virginia." (ECF No. 15-3 ¶ 10).

11

in Maryland. Therefore, the District of Columbia has a "local interest in having [this] localized controvers[y] decided at home." *Hausfeld*, 16 F.Supp.3d at 605 (quoting *Atl. Marine*, 571 U.S. at 62 n.6).

The District of Columbia is also more familiar with its own law, which applies to four of Plaintiff's five claims. *Cf. Int'l Masonry Training & Educ. Found. v. Haw. Masons' Training Fund*, No. 18-cv-3320-PX, 2019 WL 1492684, at *3 (D.Md. Apr. 3, 2019) (favoring transfer where four of the six counts were brought under the transferee state's law, even though the other two counts were brought under federal law). Plaintiff relies on *Karn v. PTS of Am., LLC*, No. 16-cv-3261-GJH, 2019 WL 556970 (D.Md. Feb. 11, 2019), for the proposition that this court "need not transfer this case solely because [District of Columbia] law may be applied" to four of the five claims. (ECF No. 19, at 9 (quoting *Karn*, 2019 WL 556970, at *6)). The *Karn* court, however, accorded great deference to the plaintiff's choice of forum, which it found "weighs more heavily" than the accurate application of state law. *Karn*, 2019 WL 556970, at *6. Here, on the contrary, Plaintiff's choice of forum is not entitled to great deference, as discussed above. Consequently, the court finds that the balance tips in the opposite direction, in favor of transfer.

**III. Conclusion**

For the foregoing reasons, Defendant's motion to transfer venue to the United States District Court for the District of Columbia will be granted.  A separate order will follow.

```
                                    /s/
                         DEBORAH K. CHASANOW
                         United States District Judge
```